IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

              Plaintiff,

      vs.                         **Case No. 06-40110-01-RDR**

DAMIEN CORTEZ FORD,

              Defendant.

---

**MEMORANDUM AND ORDER**

There is a three-count indictment in this case.  Defendant is charged in Count 1 with taking a pair of shoes through threat of physical violence in violation of the Hobbs Act, 18 U.S.C. § 1951. In Count 2, defendant is charged with using a firearm during and in relation to the Hobbs Act violation charged in Count 1, in violation of 18 U.S.C. § 924(c)(1)(A).  In Count 3, defendant is alleged to have possessed a firearm as a convicted felon in violation of 18 U.S.C. § 922(g).

This case arises from events on May 10, 2006 when loss prevention officers at J.C. Penney's in Topeka approached defendant outside the store and asked him to return to the store with them. The J.C. Penney's store is in a shopping mall.  The loss prevention officers suspected that defendant had shoplifted a pair of athletic shoes.  A scuffle ensued inside the store and defendant is alleged to have brandished a gun and left the store again with shoes he did not pay for.  The police were summoned.  They looked in the general area for defendant.  Eventually, defendant was located, arrested

and taken to the Law Enforcement Center in Topeka, where he was interviewed over a four-hour period. When defendant was arrested, he did not have a gun or the shoes he allegedly stole. A car, which was connected to defendant or persons defendant was with, was searched on the day of the incident and then searched again days later pursuant to a search warrant.

This case is before the court upon two motions to suppress and a motion to dismiss Counts 1 and 2. The evidentiary record consists of two arrest reports, a search warrant, a search warrant affidavit, and a video disc of defendant's interrogation. No testimony was presented to the court.

<u>Motion to suppress statements and evidence</u>

In this motion, defendant seeks to suppress statements he made during interrogation and physical evidence obtained as a result of the interrogation. Defendant makes three arguments for suppression: defendant contends that the interrogation was continued improperly after he invoked his Fifth Amendment right to silence; defendant contends that the statements he made were involuntary because he was subjected to physical and psychological coercion; and defendant further asserts that misrepresentations were made to deceive him into speaking and cooperating with the interrogators.

**Invoking Right to Silence**

The <u>Miranda</u> decision holds that during interrogation if a

2

person indicates in any manner that he wishes to remain silent, the interrogation must stop.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 473-74 (1966).  There is "no ritualistic formula or talismanic phrase [which] is essential in order to invoke the privilege against self-incrimination."  <u>Emspak v. United States</u>, 349 U.S. 190, 194 (1955). But, invocation of the right to silence must be unequivocal and unambiguous to require the cessation of questioning.  Cf., <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994) (invocation of the <u>Miranda</u> right to counsel requires an unequivocal and unambiguous statement); see <u>Coleman v. Singletary</u>, 30 F.3d 1420 (11th Cir. 1994) <u>cert. denied</u>, 514 U.S. 1086 (1995) (applying <u>Davis</u> rule to the <u>Miranda</u> right to silence); <u>U.S. v. Plummer</u>, 118 F.Supp.2d 945, 952-53 (N.D.Iowa 2000) (discussing cases that rule likewise).

The court has carefully reviewed the video of the interrogation.  There are various comments made by defendant from time to time which could be construed perhaps as invoking the right to silence.  At 8:44 p.m. and 8:45 p.m. as noted on the video disc, defendant said:  "Take me on to book-in" and "I'm not answering anything else."  At 10:26 p.m. and 10:27 p.m., defendant said: "Let me go to DOC," "Just send me over," and "I'm through man."  He repeated "I'm through" several times.  He also stated prior to that time: "That's it" (9:49 p.m.) and "I'm through man" (10:01 p.m.). However, discerning the meaning of these statements is more difficult in the context of the video than when they are isolated

in print.

We have faced this issue in two previous cases:  <u>U.S. v. Mathews</u>, 2003 WL 22717382 (D.Kan. 10/23/03) and <u>U.S. v. Landers</u>, 2001 WL 83278 (D.Kan. 1/10/01).  In <u>Mathews</u>, the defendant said during interrogation "I'm not going to say anything else" and "I'm not going to answer anything."  In <u>Landers</u>, the defendant answered "No" twice when asked if he would waive his right to silence, then the defendant asked if it would "make it worse or better" and finally said, "Then I can't talk to you."  In those cases, this court held that each defendant had unambiguously invoked the right to silence and that questioning continued in violation of the <u>Miranda</u> rule.

The government has referred the court to <u>U.S. v. Mills</u>, 122 F.3d 346, 351 (7th Cir. 1997).  In that case, the district court considered a defendant who stated, "Get the f___k out of my face, I don't got nothing to say, I refuse to sign," when he was presented with a <u>Miranda</u> waiver form in the back of a squad car. The Seventh Circuit found that it was permissible for the district court to hold that these were just angry comments and not an unambiguous assertion of the defendant's right to silence. [1] Similarly, in <u>U.S. v. Sherrod</u>, 445 F.3d 980, 982 (7th Cir. 2006), the court held that the comment, "I'm not gonna talk about nothin'"

---

[1]The factual background of <u>Mills</u> is found in <u>U.S. v. Banks</u>, 78 F.3d 1190 (7th Cir. 1996).

was ambiguous because the comment was made during the middle of an explanation of the Miranda warnings and the charges.  After the warnings and explanation of the charges were completed, the defendant executed a written waiver.  Also, in U.S. v. Cooper, 85 F.Supp.2d 1 (D.D.C. 2000), the court found ambiguity in the statement, "Take me back, please [to Prince George's County]" during an interrogation in an FBI Field Office.  Id. at pp. 20-21.

In this case, defendant was interrogated by Detective Scurlock and Detective Biggs.  Defendant was talkative with them during most of the interrogation.  He was garrulous at times.  He even engaged in soliloquy when he was left alone in the room, perhaps for the benefit of the cameras he knew were recording the events.  While defendant did not need to be coaxed to speak, his interrogators did coax defendant to say what they apparently wanted to hear.  When defendant said, "I'm not answering anything else," he repeated it two or three times.  But, he was not emphatic.  He made the comments to Detective Scurlock who had just entered the room and presented defendant some photographs to identify.  Detective Biggs had just left the room after a heated exchange with defendant. Defendant did not appear to mean that he wanted to cease the interrogation because he immediately addressed Detective Scurlock's questions regarding the photographs.  It's not clear that the comments were intended to be taken literally.  It appears more likely that the comments were tossed out as a means of determining

or acknowledging why Detective Scurlock had entered the room. Sometimes people say they won't do what they know they are going to do, or they make statements in contradiction to what they really think. For instance, a person might say it's not going to rain, when he thinks it is going to rain. In context, defendant's statement that he wasn't going to answer anything else did not appear to clearly announce a decision to invoke his <u>Miranda</u> rights.

Similarly, the comments defendant made up to approximately 10:26 p.m. appeared to be part of the give and take of the interrogation and were not a clear and unambiguous invocation of defendant's right to silence.

On the other hand, at 10:26 or 10:27 p.m., when defendant repeatedly states that he's through, it appears to the court that he has grown tired of the interrogation, that he believes it is a waste of his time and he wants it to cease. We believe this meaning should have been clear to a reasonable person listening to defendant and that the interrogation should have ceased. Instead, the officers appeared to employ a new gambit in an effort to have defendant tell them where they could find the gun defendant allegedly brandished. This involved an offer not to book defendant into jail on charges that night if he told them or could lead them to the gun's location.

To the extent the officers violated defendant's <u>Miranda</u> rights, however, any relief is limited for two reasons. First,

6

suppression relief does not extend to physical evidence.   In <u>U.S.</u>
<u>v. Patane</u>, 542 U.S. 630 (2004), the Court held that the exclusion
of physical evidence was not warranted by a <u>Miranda</u> violation even
if the physical evidence was considered to be fruit of the
statements made in connection with the <u>Miranda</u> violation.   The
<u>Patane</u> holding, which derived from a Tenth Circuit case, was
recently applied by the Tenth Circuit in <u>U.S. v. Phillips</u>, ___ F.3d
____, 2006 WL 3307270 (10th Cir. 11/15/2006).

Second, the "public safety" exception to suppression applies
to certain statements made by defendant in this case.   The "public
safety" exception was established in <u>New York v. Quarles</u>, 467 U.S.
649, 655-60 (1984) where the police questioned a suspect, without
a <u>Miranda</u> warning, about the location of a firearm which the police
believed the suspect had just discarded in a supermarket.   The
Court held that the suspect's statements in response to questions
posed in reaction to a threat to public safety could be used in a
later trial even though a <u>Miranda</u> warning was not given prior to
the questions.   The "public safety" exception has also been applied
in instances where questioning contrary to <u>Miranda</u> occurred after
the <u>Miranda</u> warning was given.   <u>U.S. v. Mobley</u>, 40 F.3d 688, 692
(4th Cir. 1994) <u>cert. denied</u>, 514 U.S. 1129 (1995); <u>U.S. v.</u>
<u>DeSantis</u>, 870 F.2d 536, 541 (9th Cir. 1989).   In the instant case,
there was reasonable cause to believe that defendant had discarded
a firearm in a public area.   Although hours had passed since the

firearm was abandoned, the court believes the "public safety" exception applies and that any response defendant made to a question relating to the location of the firearm should not be suppressed even if the question was posed in violation of the <u>Miranda</u> rule.

### Physical and psychological coercion

The court rejects defendant's claim that the statements he made were the result of psychological or physical coercion. Defendant was in a small but seemingly comfortable room in the Law Enforcement Center for over four hours. Much of this time he was alone in the room and not being questioned. He received a <u>Miranda</u> warning. It is clear from the video that defendant had been interrogated by police officers, including Detective Biggs, in the past. He had been in prison before. He had a good deal of experience with the criminal justice system and appeared to have an informed viewpoint concerning how the events and charges in this matter might play out. Defendant did not ask for food or water or a chance to use the bathroom during the interrogation. He did ask to get messages to other persons, and the officers appeared attentive to these requests. There is no reason to believe that he would have been denied food, water or bathroom privileges had he requested them. Defendant is a young adult. He had a cough, but appeared in good physical condition. He did not seem to suffer from psychological difficulty or mental deficiency.

8

At times the questioning was repetitive and persistent. A few times the questioning was angry. Most of the time the interrogation was conducted calmly. Defendant was not shackled or handcuffed during the questioning. After evaluating all of the facts and circumstances, we find that defendant's statements were voluntary and were not made because of physical or psychological coercion.

**Promise or misrepresentation of leniency**

Close to 10:30 p.m., which was near the end of the interrogation of defendant, Detective Biggs indicated to defendant that he would not be booked on charges that night if he was honest with the officers and told the officers where they could find the firearm or if he would direct them to the firearm's location. This obviously interested defendant. In response, he made statements admitting that he had a firearm in his car, but denying that he took the weapon with him into J.C. Penney's. He also made seemingly evasive responses regarding the location of the firearm. In addition, he asked questions regarding the offer to release him from custody that night. The questions and the answers seemed to confuse what was being offered. It was not clear whether Detective Biggs was promising that defendant would not be jailed that night for any reason or whether he was promising that defendant would not be jailed on the charges upon which he was arrested. As it turned out, according to the briefs filed in this matter, after defendant

accompanied police officers in search of the firearm, he was returned to the Law Enforcement Center and jailed upon a preexisting arrest warrant for a parole violation. The charges upon which he was arrested were not filed until some days later. According to an affidavit filed in support of a search warrant for defendant's car, defendant showed the detectives where to look for the gun, and they located the pistol in a set of bushes in front of a restaurant near the shopping mall.

Promises of leniency, whether true or false, are relevant in determining whether a statement made in interrogation or cooperation with the police is voluntary or coerced. See U.S. v. Lopez, 437 F.3d 1059, 1064 (10th Cir. 2006). In Lopez, the court held that it was coercive to make statements in interrogation to the effect that the defendant would get 60 years if he did not talk, but he would get 6 years if he confessed and explained that his actions were a mistake. In addition to the promises of leniency, the officers in Lopez also exaggerated the evidence they had against the defendant. The totality of the circumstances led the Tenth Circuit to affirm the suppression of confessions in that case.

Promises of less substantial leniency may not produce an "involuntary" confession. See U.S. v. Rodgers, 186 F.Supp.2d 971, 976 (E.D.Wis. 2002) (describing a continuum from serious threats or substantial promises which would lead to suppression to mere

suggestions that cooperation is a good thing which would not lead to suppression). For instance, in Pharr v. Gudmanson, 951 F.2d 117 (7th Cir. 1991), a promise that state charges for theft would not be brought in one county, which led the defendant to mistakenly believe that state charges would not be brought at all, was not considered to be sufficient to render a confession involuntary. The confession was used as evidence in a trial on state charges for concealment of stolen goods in a different county.

In determining whether to suppress any statement by defendant to the police officers, the court must consider whether the statement was "'the product of an essentially free and unconstrained choice'" or whether "'his will has been overborne and his capacity for self-determination critically impaired.'" Lopez, 437 F.3d at 1063 (quoting U.S. v. Perdue, 8 F.3d 1455, 1466 (10th Cir. 1993). This determination is based upon the totality of the circumstances. Id.

The court has already discussed some of defendant's characteristics and the circumstances of his interrogation. We would note in addition that defendant knew that he had been arrested on suspicion of armed robbery. He knew that a charge of possession of a firearm as a convicted felon was a possibility. He was aware that these charges held the potential of significant prison time. He also knew that a charge of mere shoplifting was a possibility. He was aware that the firearm he allegedly possessed

11

had not been found at the time of his interrogation.  He further knew he was on parole, that his arrest and these charges could have an impact upon his parole, and that he needed to see his parole officer promptly.

What defendant apparently did not know was that there was an arrest warrant already issued for him by his parole officer.  We assume that the police officers knew this, but decided not to inform defendant as they were dangling before him the possibility of being released from custody that night.

In general, the admission of confessions or incriminating statements is not based on a defendant having complete or even accurate knowledge of the evidence against him or the possible benefits or consequences of making a statement.  Nor is it dependent upon the police providing such information to a defendant.  Judge Posner has stated:

> The policeman is not a fiduciary of the suspect.  The police are allowed to play on a suspect's ignorance, his anxieties, his fears, and his uncertainties; they just are not allowed to magnify those fears, uncertainties, and so forth to the point where rational decision becomes impossible.

U.S. v. Rutledge, 900 F.2d 1127, 1130 (7th Cir.) cert. denied, 498 U.S. 875 (1990); see also, U.S. v. Byram, 145 F.3d 405, 408 (1st Cir. 1998) ("trickery is not automatically coercion").

This case does not involve a promise not to prosecute or a promise to substantially reduce punishment.  At most, it involved a promise that defendant would not be booked into jail on theft or

12

robbery charges for one night and a misrepresentation that defendant would be released from custody for one night.  Given the limited inducement made in this case and the other circumstances, the court shall not find that the statements or cooperation of defendant were involuntary.  We draw support for this conclusion from the above-cited cases as well as a series of Eighth Circuit opinions.  In U.S. v. Aquilar, 384 F.3d 520, 527 (8th Cir. 2004), the court stated:  "the mere fact that police promised [defendant] that he could leave after he confessed is not sufficient to find that [defendant] confessed involuntarily."[2]  In U.S. v. LeBrun, 363 F.3d 715 (8th Cir. 2004) cert. denied, 543 U.S. 1145 (2005), the defendant was told words that led him to believe that he would not be prosecuted if he confessed to a "spontaneous" murder.  The court held that this mistaken belief was not sufficient to render the confession involuntary.  Id. at 725-26.  In U.S. v. Larry, 126 F.3d 1077 (8th Cir. 1997), the defendant was promised he would be released from jail and not prosecuted for a drive-by shooting if he told officers about a sawed-off shotgun in a car.  The defendant was prosecuted on possession of ammunition charges, and his statements about the sawed-off shotgun were used in connection with his sentencing.  The court held that the promises of being released were not sufficient to be considered to have coerced a confession.

---

[2] Other factors, however, led to a finding in Aquilar that the confession was involuntary.

13

Finally, in U.S. v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995), a suspect was promised that he would not be arrested or have to spend the night in jail if he confessed.  The court held this was not unconstitutional.

<u>Motion to suppress evidence taken from car</u>

Before and after defendant was arrested in the vicinity of the shopping mall, police officers obtained information from two observers that defendant was seen in the company of two young African-American males who also were taken into custody.  The two males had been observed sitting in a brown 1981 Buick LeSabre that was parked in the mall parking lot.  One of the males was carrying a bag which contained an electronic scales with marijuana residue. The loss prevention officers also reported that they had retrieved keys to the vehicle from defendant.  Defendant dropped the keys and other items, including a car title for the vehicle, during the scuffle in the store.  One of the police officers, Officer Soden, decided to look at the vehicle.  The doors were unlocked and the windows were partially rolled down.  Officer Soden observed what appeared to be a plastic baggy of marijuana on the front console. A faint odor of marijuana emanated from the car.  He opened a door to the vehicle and confirmed that there was marijuana in the baggy and opened the glove compartment, where he found gun ammunition. Then, he suspended his search and the car was impounded and later searched pursuant to a search warrant.

14

In the court's opinion, Officer Soden had adequate cause to make a warrantless search of the vehicle first, because he observed marijuana in plain view when he looked through the partially opened window, and because he smelled the odor of marijuana.  See <u>U.S. v. Sparks</u>, 291 F.3d 683, 691-92 (10th Cir. 2002).  In addition, he had reason to believe that there may have been evidence of the alleged robbery in the vehicle because defendant had the keys and car title to the vehicle, the vehicle was in the mall parking lot, and defendant recently had been seen with two persons who had been observed in the vehicle.  "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." <u>U.S. v. Edwards</u>, 242 F.3d 928, 939 (10th Cir. 2001) (interior quotation omitted).

The court also believes that evidence obtained from the search done pursuant to a search warrant should not be suppressed.  There was probable cause to believe that the vehicle would contain evidence of the alleged robbery, as well as drug crimes, on the basis of the search warrant affidavit.  This remains so even if one disregards the impact of any statements made by defendant during his interrogation.

<u>Motion to dismiss Counts 1 and 2</u>

Defendant's motion to dismiss argues that the evidence in this case only supports a shoplifting charge, not a violation of the

Hobbs Act, 18 U.S.C. § 1951.  The Hobbs Act makes robbery that affects interstate commerce a federal criminal violation.  The statute defines "robbery" as:

> "The unlawful taking . . . of personal property from the person or in the presence of another, against his will, by means of actual or threatened force or violence, ..."

18 U.S.C. § 1951(b).

Count one alleges that defendant took a pair of shoes by means of actual or threatened force from the presence of three persons, two of whom were employees of J.C. Penney's.  The government asserts that they were employed as loss prevention officers.  The discovery in this case, examined in a light favorable to the government, indicates that defendant shoplifted the shoes, left the store, was returned to the store by loss prevention officers, brandished a gun to escape from the loss prevention officers, and again left the store with the shoes.

Under similar factual allegations, the court held that this constituted robbery in <u>People v. Estes</u>, 194 Cal.Rptr. 909 (Cal.App. 1983).  The court held that the loss prevention officers could be considered in constructive possession of the store's property.  The court further held that preventing the officers from regaining control over the merchandise by force is the same as taking the property from them by force in the first instance because the crime of robbery includes the element of asportation.  In other words, the court considered the crime of robbery to be a continuing

16

offense which includes the element of escaping with the stolen goods.   Using force or fear to escape with the property or to resist the return of the property is accomplishing the taking of property through actual or threatened force.

There is some split in authority among state courts on this question.   See cases collected at 93 A.L.R.3d 643.   Indeed, Kansas courts, for instance, hold that asportation is not an element of robbery (State v. Aldershof, 556 P.2d 371, 375 (Kan. 1976)), although Kansas courts still would hold, in our opinion, that the discovery in this case supports a charge of robbery.   Cf., State v. Bosby, 24 P.3d 193 (Kan.App. 2001) (defendant committed a robbery when his accomplice struck a victim while they were attempting to drive away with two lawn mowers stolen from the victim's garage in a truck defendant was driving); State v. Randle, 81 P.3d 1254 (Kan.App. 2004) (defendant committed robbery when he stole a bag of coins from a truck, placed the bag in defendant's car and then pushed the victim away and drove off as the victim leaned in the car to retrieve the bag).

Federal courts, however, have found that asportation is an element of robbery.   See U.S. v. Pate, 932 F.2d 736, 738 (8th Cir. 1991); U.S. v. Martin, 749 F.2d 1514, 1518 (11th Cir. 1985); U.S. v. Willis, 559 F.2d 443, 444 (5th Cir. 1977); U.S. v. Von Roeder, 435 F.2d 1004, 1010 (10th 1971).

On the basis of the limited look at the facts presented by the

parties in this matter, we find that there is sufficient grounds to charge defendant with committing robbery in violation of the Hobbs Act.

Conclusion

In conclusion, defendant's motion to dismiss is denied. Defendant's motion to suppress evidence obtained from the search of the car is also denied. Defendant's motion to suppress evidence obtained from his interrogation is denied, except for any statements made after 10:27 p.m. which were not in response to questions related to finding the location of his firearm.

**IT IS SO ORDERED.**

Dated this 7th day of December, 2006 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge

18